

FILED

07 MAY 24 PM 3:59

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: *U*            DEPUTY

Wayne S. Kreger (Cal. SBN: 154759)
Email:wkreger@maklawyers.com
Bevin E. Allen (Cal. SBN: 221936)
ballen@maklawyers.com
Milstein, Adelman & Kreger LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405
Tel.: (310) 396-9600; Fax: (310) 396-9635

Howard M. Rubinstein (Fla. SBN: 104108)
E-mail: howardr@pdq.net
Attorney at Law
914 Waters Avenue, Suite 20
Aspen, Colorado 81611
Tel.: (832) 715-2788
*(To apply as Counsel Pro Hac Vice)*

Harold M. Hewell (Cal. SBN: 171210)
Email: hmhewell@hewell-lawfirm.com
Hewell Law Firm, APC
402 W. Broadway, Fourth Floor
San Diego, California 92101
Tel: (619) 235-6854; Fax: (619)235-9122

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

JOHN COLLIARD, as an individual
consumer, and on behalf of all others similarly
situated,

     *Plaintiff,*

v.

MENU FOODS, INC., a New Jersey
corporation, and CHEMNUTRA, INC., a
Delaware corporation,

     *Defendant.*

: Civil Action No. 07CV 951 IEG (BLM)

: **COMPLAINT FOR INJUNCTIVE
: RELIEF, RESTITUTION AND
: DAMAGES**

: *Class Action*

: *Jury Trial Requested*

**COMPLAINT**
Page 1 of 23

Plaintiff alleges:

## I. PARTIES

1. Plaintiff John Colliard is an individual consumer who resides in, and is a citizen of, the County of San Diego, State of California. Mr. Colliard respectfully requests a jury trial.

2. Defendant Menu Foods, Inc., ("Menu") is a New Jersey corporation with its principal place of business in the State of New Jersey, specifically located at 9130 Griffith Morgan Lane, Pennsauken, New Jersey. Defendant is ultimately owned or controlled by Menu Foods Income Group, an Ontario-based legal entity. Some of Defendant's high managerial officers or agents with substantial authority are also high managerial officers or agents of Menu Foods Income Group. Menu may be served through its registered agent for service, Corporation Trust Company, 820 Bear Tavern Road, West Trenton, New Jersey 08628.

Menu owns, controls, is related to, or an affiliate of, a firm with plants located in the United States that manufacture or process pet food. These plants are located in Emporia, Kansas, and Pennsauken, New Jersey, and/or at other locations in the United States. For diversity purposes, Menu may be considered a "citizen" of either New Jersey or Kansas. Menu is the leading North American private label/contract manufacturer of wet pet food products sold by supermarket retailers, mass merchandisers, pet specialty retailers, and other wholesale and retail outlets, including Wal-Mart, Safeway, Kroger, PetSmart, Giant Food and other large retail chains, and has provided pet food products to or for Procter & Gamble, Inc. It produces hundreds of millions of containers of pet food annually.

Menu has manufactured or produced pet food for private labels for about 17 of the 20 leading retailers in the United States. Menu's business includes manufacturing, producing, distributing, or selling cat food under various brands or labels, and/or for third-party firms, including: America's Choice, Preferred Pets, Authority, Best Choice, Companion, Compliments, Demoulus Market Basket, Eukanuba, Fine Feline Cat, Food Lion, Food Town, Giant Companion, Hannaford, Hill Country Fare, Hy-Vee, Iams, Laura Lynn, Li'l Red, Loving Meals, Meijer's Main Choice, Nutriplan, Nutro Max Gourmet Classics, Nutro Natural Choice, Paws, Pet Pride, President's Choice, Priority, Sav-a-Lot, Schnucks, Science Diet Feline Savory

Cuts Cans, Sophsitacat, Special Kitty US, Springfield Prize, Sprout, Total Pet, Wegmans, Western Family, White Rose, and Winn Dixie.

Defendant's business includes manufacturing, producing, distributing, or selling dog food under various brands or labels, and/or for third-party firms, including: America's Choice, Preferred Pets, Authority, Award, Best Choice, Big Bet, Big Red, Bloom, Bruiser, Cadillac, Companion, Demoulus Market Basket, Eukanuba, Food Lion, Giant Companion, Great Choice, Hannaford, Hill Country Fare, Hy-vee, Iams, Laura Lynn, Li'l Red, Loving Meals, Meijer's Main Choice, Mixables, Nutriplan, Nutro Max, Nutro Ultra, Nutro, Ol'Roy US, Paws, Pet Essentials, Pet Pride – Good & Meaty, President's Choice, Price Chopper, Priority, Publix, Roche Brothers, Sav-a-Lot, Schnucks, Shep Dog, Sprout, Statler Bros, Total Pet, Western Family, White Rose, Winn Dixie, and Your Pet. At all times relevant hereto, Menu was and is doing business in the County of San Diego, State of California.

3. ChemNutra, Inc. ("ChemNutra") is a Delaware corporation with its principal place of business in the State of Nevada, specifically located at 810 S. Durango Drive, Suite 102, Las Vegas, Nevada. ChemNutra may be served through its registered agent for service, National Registered Agents, Inc., 160 Greentree Drive, Suite 101, Dover, Delaware 19904. ChemNutra imports nutritional and pharmaceutical chemicals from China to the US. Its customers include Menu and other manufacturers of food, pet food, and nutritional ingredients. For diversity purposes, ChemNutra may be considered a "citizen" of either Nevada or Delaware. At all times relevant hereto, ChemNutra was and is doing business in the County of San Diego, State of California.

4. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, the employees of defendants, their subsidiaries, affiliates and other related entities, as well as the employees of those subsidiaries, affiliates and other related entities, were the agents, servants and employees of defendants, and at all times herein mentioned, each was acting within the purpose and scope of said agency and employment.

5. All allegations in this Complaint are based on information and belief and are likely to have evidentiary support after reasonable opportunity for further investigation and discovery.

## II. VENUE AND JURISDICTION

6. This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the plaintiff class is a citizen of a state different from any defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000, exclusive of interest and costs. Plaintiff alleges that the total claims of individual class members in this action are in excess of $5,000,000 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §1332(d)(2), (5). Plaintiff is a citizen of the State of California, whereas, as set forth above, Menu can be considered a citizen of either New Jersey or Kansas for the purposes of diversity, and ChemNutra can be considered a citizen of either Nevada or Delaware for those purposes. Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. §1332(d)(2)(A). Furthermore, plaintiff alleges that more than two-thirds of all of the members of the proposed Plaintiff Class in the aggregate are citizens of a state other than California, where this action is originally being filed, and that the total number of members of the proposed Plaintiff Class is greater than 100, pursuant to 28 U.S.C. §1332(d)(5)(B).

7. Venue in this district is proper pursuant to 28 U.S.C. §1391(b) because defendants conduct business within, may be found in, and are subject to personal jurisdiction in this district. The original of the "Declaration of Harold M. Hewell Pursuant to Civil Code §1780(c) of the Consumer Legal Remedies Act, Civil Code §1750 et seq." regarding venue under the California Consumer Legal Remedies Act is attached as Exhibit "A" to this Complaint and is incorporated herein by reference.

## III. FACTUAL ALLEGATIONS

8. On or on about March 16, 2007, Menu issued a recall for certain pet food for cats and dogs that it manufactured in plants that it controlled, owned, operated, or managed in the United States. The recall was prompted by consumer complaints received by Menu and by trials conducted by Menu.

9. Menu has informed the U.S. Food and Drug Administration ("FDA") that it received the first complaints of kidney failure and deaths among cats and dogs from pet owners on February 20, 2007, and that it began new tests on it pet food products on February 27, 2007. In those tests, Menu fed 40-50 cats and dogs its products and seven animals of those animals died.

10. Subsequent to the recall, analysis of pet food from Menu found that it contained melamine, a chemical found in plastics and pesticides and not approved for use in pet food by the U.S. Food and Drug Administration ("FDA"). The source of the melamine was found to be wheat gluten, a vegetable protein Menu used in pet foods. Menu then undertook an accounting of its wheat gluten sources and identified a single interplant transfer of wheat gluten supplied by ChemNutra that was shipped from Menu's plant in Emporia, Kansas, to its plant in Streetsville, Ontario. This wheat gluten was subsequently used in the production of pet food in December 2006 and January 2007 and was subject to the recall. Menu expanded its recall to include all wet cat and dog food produced with adulterated wheat gluten supplied by ChemNutra. On or about May 2, 2007, Menu expanded the recall to include cuts and gravy and select other products which do not include ChemNutra wheat gluten but which were manufactured at any of Menu's plants during the period that ChemNutra wheat gluten was used at that plant due to the possibility of cross-contamination. Menu has received consumer and study results indicating cross-contamination.

11. The FDA has investigated the Las Vegas office of ChemNutra to determine whether the company violated the federal Food, Drug, and Cosmetic Act ("FDCA"). The FDA also has searched Menu's production facility in Emporia, Kansas. Menu has said the U.S. Attorney's offices in Kansas and the western district of Missouri have targeted the company as part of investigations into whether it violated the FDCA.

12. In February 2007, plaintiff began feeding his dog, "Orville," a 10-year-old Sheltie, Springfield Prize beef and gravy dog food products. Shortly thereafter, the dog became ill, vomiting, suffering from diarrhea and urinating excessively with little control. Plaintiff learned of the Menu recall, and suspected that the Springfield Prize dog food he was feeding his dog might be the source. He switched to another dog food and the symptoms ceased.

### IV. CLASS ALLEGATIONS

13. Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

14. Pursuant to California Civil Code §1781, California Code of Civil Procedure §382, and Federal Rule of Civil Procedure ("FRCP") 23, plaintiff brings this action on behalf of himself and all other consumers who purchased defendant's contaminated Products during the Class Period. Defendant's practices and omissions were applied uniformly to all members of the Class, so that the questions of law and fact are common to all members of the Class. All putative Class members were and are similarly affected by having purchased and fed to their pets defendant's contaminated Products, and the relief sought herein is for the benefit of plaintiff and members of the putative Class. Plaintiff is informed and believes, and on that basis alleges, that the Plaintiff Class is so numerous that joinder of all members would be impractical.

15. Based on the annual sales of the Products and the popularity of the Products, it is apparent that the number of consumers of the contaminated Products would at least be in the many thousands, thereby making joinder impossible

16. Questions of law and fact common to the Plaintiff Class and the subclasses exist that predominate over questions affecting only individual members, including, inter alia:

(a) Whether defendant's practices and representations made in connection with the labeling, advertising, marketing, promotion and sales of the contaminated Products were deceptive or unfair in any respect, thereby violating California's Unfair Competition Law ("UCL), Cal. Bus. & Prof. Code §17200 et seq.;

(b) Whether defendant's practices and representations made in connection with the labeling, advertising, marketing, promotion and sales of the contaminated Products were deceptive or unfair in any respect, thereby violating California's False Advertising Law ("FAL), Cal. Bus. & Prof. Code §17500 et seq.;

(c) Whether defendant's practices and representations made in connection with the labeling, advertising, marketing, promotion and sales of the contaminated Products

were false and/or misleading;

(d) Whether defendants breached implied warranties, thereby causing harm to plaintiff and Class members;

(e) Whether defendant's conduct in connection with the practices and representations made in the labeling, advertising, marketing, promotion and sales of the contaminated Products unjustly enriched defendant at the expense of and to the detriment of plaintiff and Class members;

(f) Whether defendant has violated California's Consumer Legal Remedies Act ("CLRA"), California Civil Code §1750 et seq. by the practices and representations made in connection with the labeling, advertising, marketing, promotion and sales of the contaminated Products within this State.

(g) Whether defendant was negligent in its manufacture, production and distribution of the contaminated Products, thereby causing harm to the plaintiff and Class members;

(h) Whether defendant's Products were defective, thereby causing harm to plaintiff and Class members;

(i) Whether defendant's conduct as set forth above injured consumers and if so, the extent of the injury.

17. The claims asserted by plaintiff in this action are typical of the claims of the members of the Plaintiff Class as the claims arise from the same course of conduct by defendant, and the relief sought is common.

18. Plaintiff will fairly and adequately represent and protect the interests of the members of the Plaintiff Class and all subclasses. Plaintiff has retained counsel competent and experienced in both consumer protection and class action litigation.

19. Certification of this class action is appropriate under FRCP 23(b), California Code of Civil Procedure §382 and California Civil Code §1781, because the questions of law or fact common to the respective Class members predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other

method available for the fair and efficient adjudication of these claims. Absent a class action, it would be highly unlikely that the representative plaintiff or any other Class member would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed expected recovery. Certification is also appropriate because defendant acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole. Further, given the large number of consumers of the contaminated Products, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

20. A class action is a fair and appropriate method for the adjudication of the controversy, in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that such individual actions would engender. The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of this class action.

21. In the aggregate, the claims of the individual Class members exceed the sum of $5,000,000.00, exclusive of interest and costs.

**V. FIRST CAUSE OF ACTION:**

**FOR VIOLATION OF BUS & PROF. CODE §17200 ET SEQ.**

**(AGAINST ALL DEFENDANTS)**

22. Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

23. This cause of action is brought on behalf of plaintiff and members of the general public pursuant to Cal. Bus. & Prof. Code §17200 et seq., which provides that "unfair competition shall mean and include any unlawful, unfair or deceptive business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter I (commencing with Section 17500) as Part 3 of Division 7 of the Business and Professions

Code."

24. Plaintiff is informed and believes, and based on such information and belief, alleges that defendants committed unfair business acts and/or practices. The utility of defendants' misleading and/or deceptive labeling, advertising, promotion or marketing of the Products, as well as its non-disclosure of certain health consequences for pets with respect to ingestion of the contaminated Products, even after receiving consumer complaints and having animals die in its own tests, for the purpose of selling its contaminated Products, is negligible when weighed against the extent of harm to the general public, plaintiff and Class members.

The harmful impact upon members of the general public and the Class who were and are misled and deceived with respect to defendants' labeling, advertising, promotion or marketing of the Products as safe and healthy pet food without disclosing the risk of contamination, far outweighs any reasons or justifications by defendants in using that characterization of the Products in the labeling, advertising, promotion or marketing of the Products and failing to disclose the risk of contamination and consequent harm.

Defendants had an improper motive (as alleged in this Complaint) in labeling, advertising, promotion or marketing the Products as safe and healthy pet foods, even after receiving consumer complaints and having animals die in its own tests, and in failing to immediately recall the Products as set forth above. The utilization of unlawful, unfair and/or deceptive practices was and is under the sole control of defendants, and was fraudulently and deceptively hidden from members of the general public in its labeling, advertising, promotion or marketing.

As a purchaser and consumer of defendants' contaminated Products, and as a member of the general public in California who has been injured by defendants' unlawful and/or unfair practices, plaintiff is entitled to and does bring this class action seeking all available remedies under the UCL, including declaratory and injunctive relief and restitution, as well as attorneys' fees and costs.

25. Defendants committed a deceptive act or practice by making written and/or oral material representations (and material omissions) that have a capacity, tendency, or likelihood

to deceive or confuse reasonable consumers by representing that the Products were safe and healthy pet foods, even after receiving consumer complaints and having animals die in its own tests, and in selling the Products without disclosing the risk of contamination and consequent harm as set forth above.

26. Defendants' acts, misrepresentations, concealment of material facts and failures to disclose as alleged in this Complaint, constitute unfair and/or deceptive business practices within the meaning of California Bus. & Prof. Code §17200 et seq.

27. Plaintiff and members of the general public were likely to be deceived by defendants' scheme to misrepresent the actual nature of the Products.

28. Pursuant to California Bus. & Prof. Code §17203, plaintiff, on behalf of himself and members of the general public, seeks an order of this Court:

(a) Enjoining defendants from continuing to engage, use, or employ any unlawful, unfair and/or deceptive business act or practice and unfair, deceptive, untrue or misleading labeling, advertising, promotion or marketing and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code;

(b) Restoring all monies that may have been acquired by defendants as a result of such unlawful, unfair, or deceptive act or practices;

(c) Reimbursing plaintiff and Class members for all veterinary costs incurred as the result of the Products; and

(d) Establishing a medical monitoring program for consumers' pets that may have ingested the contaminated Products.

29. Plaintiff and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

30. The unlawful, unfair and/or deceptive acts and practices of defendants, as described above, present a serious threat to plaintiff and members of the general public.

31. As a result of defendants' violation of the UCL, plaintiff and the Class are entitled to restitution for out-of-pocket expenses and economic harm.

32. Pursuant to Civil Code §3287(a), plaintiff and Class Members are further entitled to pre-judgment interest as a direct and proximate result of defendants' wrongful conduct. The amount of damages suffered as a result is a sum certain and capable of calculation and plaintiff and Class members are entitled to interest in an amount according to proof.

## VI. SECOND CAUSE OF ACTION:

## FOR VIOLATION OF BUS. & PROF. CODE §17500 ET SEQ.

## (AGAINST MENU ONLY)

33. Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

34. In violation of California Bus. & Prof. Code §17500, defendant has disseminated, or caused to be disseminated, false and misleading statements and representations in advertisements, labeling, promotion and/or marketing of the Products. These include labeling, advertising, promotion or marketing the Products as safe and healthy pet food, even after receiving consumer complaints and having animals die in its own tests, as set forth above.

35. Defendant's representations in the advertisements, promotions and/or marketing of the contaminated Products was untrue and/or misleading as set forth above.

36. Defendant disseminated labeling and advertising concerning the Products that by its very nature is unfair, deceptive, untrue or misleading within the meaning of California Bus. & Prof. Code §17500 et seq. Such advertisements were likely to deceive, and did deceive, the consuming public.

37. In making and disseminating the statements alleged herein, defendant knew or should have known that the statements were untrue or misleading, and acted in violation of California Bus. & Prof. Code §17500 et seq.

38. As a direct and proximate result of defendant's wrongful conduct, plaintiff and the Class Members have suffered substantial monetary and non-monetary damage.

39. Pursuant to California Business and Professions Code §17535, plaintiff, on behalf of himself and members of the general public, seeks an order of this Court:

(a) Enjoining defendant from continuing to engage, use, or employ any act prohibited

by Chapter 1 (commencing with Section 17500) of part 3 of Division 7 of the Business and Professions Code;

(b) Restoring all monies that may have been acquired by means of defendant's false and misleading statements in advertisements, promotions and/or marketing described herein;

(c) Reimbursing plaintiff and Class members for all veterinary costs incurred as the result of the Products; and

(d) Establishing a medical monitoring program for consumers' pets that may have ingested the contaminated Products.

40. As such, plaintiff and the members of the Class request that this Court cause the defendant to restore this money to them, and to enjoin the defendant from continuing to violate California Bus. & Prof. Code §17500 et seq., as alleged above.

41. If defendant's conduct is not enjoined, plaintiff and the members of the Class will continue to be damaged by defendant's false and misleading labeling and advertising.

42. Pursuant to Civil Code §3287(a), plaintiff and Class members are further entitled to pre-judgment interest as a direct and proximate result of defendant's wrongful conduct. The amount of funds paid by plaintiff and Class members as a result of said acts is a sum certain and capable of calculation, and plaintiff and Class members are entitled to interest in an amount to be set forth according to proof.

## VII. THIRD CAUSE OF ACTION:

## FOR NEGLIGENT MISREPRESENTATION

## (AGAINST MENU ONLY)

43. Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

44. Beginning at an exact date unknown to plaintiff, but at least since three years prior to the filing date of this action, defendant represented to the public, including plaintiff, by means of labeling, advertisements, promotion and/or marketing that the Products were    safe and healthy pet foods, even after receiving consumer complaints and having animals die in its

1    own tests, as set forth above.

2        45. Defendant's representations were untrue as set forth above.

3        46. Defendant made the representations herein alleged with the intention of inducing
4    the public to purchase defendant's Product.

5        47. Plaintiff and other members of the general public saw, believed, and relied on
6    defendant's labeling and advertising representations and, in reliance on them, purchased and
7    fed the Products to their pets. They would not have purchased and fed the Products to their pets
8    had they known the truth about the Products.

9        48. At the time defendant made the misrepresentations herein alleged, defendant had no
10   reasonable grounds for believing the representations to be true.

11       49. As a proximate result of defendant's negligent misrepresentations, plaintiff and other
12   members of the general public were induced to purchase and feed Products to their pets,
13   spending an amount to be determined at trial on the Products and receiving Products they
14   otherwise would not have purchased had they known the truth about the Products. As an
15   additional direct and proximate result of the misrepresentations alleged, plaintiff and Class
16   members were induced to purchase the Products and feed them to their pets, and have suffered
17   damages in an amount to be determined at trial in that, among other things, their pets have
18   become ill and in some cases died, and they have spent substantial amounts on veterinary bills
19   and other care for their pets.

20                    **VIII. FOURTH CAUSE OF ACTION:**

21                 **FOR INTENTIONAL MISREPRESENTATION**

22                        **(AGAINST MENU ONLY)**

23       50. Plaintiff realleges and incorporates by reference the allegations set forth in each of
24   the preceding paragraphs of this Complaint.

25       51. Beginning at an exact date unknown to plaintiff, but at least since three years prior
26   to the filing date of this action, defendant represented to the public, including plaintiff, by
27   means of labeling, advertisements, promotion and/or marketing that the Products were      safe
28   and healthy pet foods, even after receiving consumer complaints and having animals die in its

1   own tests, as set forth above.

2       52. Defendant's representations were untrue as set forth above.

3       53. Defendant made the representations herein alleged with the intention of inducing

4   the public to purchase the Product and feed it to their pets.

5       54. Plaintiff and other members of the general public saw, believed, and relied on

6   defendant's labeling and advertising representations and, in reliance on them, purchased and

7   fed to the Products to their pets. They would not have purchased the Products had they known

8   the truth about the Products.

9       55. At the time defendant made the representations herein alleged, defendant knew the

10  representations were false.

11      56. Defendant made these misrepresentations with the intention of depriving plaintiff

12  and Class members of property or otherwise causing injury, and was guilty of fraud.

13      57. As a proximate result of defendant's intentional misrepresentations, plaintiff and

14  other members of the general public were induced to spend an amount to be determined at trial

15  on defendant's Products, which they otherwise would not have purchased had they known the

16  truth about them. As an additional direct and proximate result of the fraud and deceit alleged,

17  plaintiff and Class members were induced to purchase the Products and feed them to their pets,

18  and have suffered damages in an amount to be determined at trial in that, among other things,

19  their pets have become ill, and in some cases died, and they have spent substantial amounts on

20  veterinary bills and other care for their pets.

21      58. Plaintiff is informed and believes and thereon alleges that defendant knew that the

22  Products were contaminated and dangerous for pets, and that defendant intended that

23  customers and the unknowing public should rely on its representations as set forth herein and

24  its suppression of facts regarding the Products. Plaintiff and other members of the general

25  public, in purchasing and using the Products as herein alleged, did rely on defendant's

26  representations, all to their damage as hereinabove alleged. In doing these things, defendant

27  was guilty of malice, oppression, and fraud, and plaintiff and Class members are, therefore,

28  entitled to recover punitive damages.

# IX. FIFTH CAUSE OF ACTION:

## FRAUDULENT CONCEALMENT

### (AGAINST MENU ONLY)

59. Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

60. Defendant suppressed the facts regarding contamination of the Products and the health risk it posed to consumer's pets, even after receiving consumer complaints and having animals die in its own tests, as set forth above.

61. Defendant was bound to disclose the truth about the risk of contamination of its Products, but delayed and failed to do so for a significant amount of time.

62. Defendant concealed these facts when it knew the truth about its Product.

63. The concealment of the truth from plaintiff and Class Members was done with the intent to induce plaintiff and Class Members to purchase the Product.

64. The reliance by plaintiff and Class members was reasonable and justified in that defendant appeared to be a reputable business and distributed its Products through reputable companies. Plaintiff and Class members would not have purchased the Products and fed them to their pets had they known the truth about the Products.

65. As a direct and proximate result of the fraud and deceit alleged, plaintiff and Class members were induced to purchase the Products and feed them to their pets, and have suffered damages in an amount to be determined at trial in that, among other things, their pets have become ill, and in some cases died, they have spent substantial amounts on veterinary bills and other care for their pets; and they have spent money on a product that was not what it was represented to be, and that they would not have purchased had they known the truth.

66. Plaintiff is informed and believes and thereon alleges that defendant knew that the Products were contaminated for a significant amount of time before it notified the appropriate agencies and the public and then issued a recall, and that defendant intended that customers and the unknowing public should rely on their representations as set forth herein regarding the Products, as well as defendant's suppression of the truth about the Products. Plaintiff and other

members of the general public, in purchasing and using the products as herein alleged, did rely on defendant's above representations, all to their damage as hereinabove alleged. In doing these things, defendant was guilty of malice, oppression, and fraud, and plaintiff and Class members are, therefore, entitled to recover punitive damages.

**X. SIXTH CAUSE OF ACTION:**

**FOR BREACH OF IMPLIED WARRANTY OF FITNESS FOR PURPOSE**

**(AGAINST ALL DEFENDANTS)**

67. Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

68. Beginning at an exact date unknown to plaintiff, but at least since four years prior to the filing date of this action, plaintiff and other Class members sought pet food that was safe and healthy to feed to their pets. In doing so, plaintiff and other Class Members relied on defendants' skill and judgment to select and furnish suitable goods for that purpose, and on or about that time defendants sold to plaintiff and other Class Members the contaminated Products. By their labeling and other promotion and marketing of the Products, defendants warranted that the Products were safe and healthy pet foods to feed to pets. Plaintiff and Class members bought the Products from defendants, relying on defendants' skill and judgment. However, defendants' Products were not safe or healthy for pets and were not fit for consumption due to potentially lethal contamination.

69. At the time of sale, defendants had reason to know the particular purpose for which the goods were required, and that plaintiff and Class members were relying on defendants' skill and judgment to select and furnish suitable and safe goods, so that there was an implied warranty that the goods were fit for this purpose.

70. However, defendants breached the warranty implied at the time of sale in that plaintiff and Class members did not receive suitable goods, and the goods were not fit for the particular purpose for which they were not made, in that the Products were not safe or healthy for pets and were not fit for consumption due to potentially lethal contamination.

71. As a proximate result of this breach of warranty by defendants, plaintiff and Class

1  members have been damaged in an amount to be determined at trial, in that, among other things,

2  their pets have become ill, and in some cases died, they have spent substantial amounts on

3  veterinary bills and other care for their pets, they have spent money on a Product that was not

4  what it was represented to be, and that they would not have purchased had they known the truth.

## XI. SEVENTH CAUSE OF ACTION:

## UNJUST ENRICHMENT

## (AGAINST MENU ONLY)

72. Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

73. Defendants produced, marketed and sold the contaminated Product.

74. Plaintiff and the Class members paid for the Products and fed it to their pets believing, based on defendant's labeling and marketing representations, that the Products were safe and healthy pet foods.

75. Defendants accepted payment by plaintiff and Class members for the Products.

76. Plaintiff and Class members purchased and fed the Products to their pets in the belief that they were purchasing and feeding their pets a safe and healthy pet food. Instead, the Products contained a potentially lethal contaminant.

77. It would be inequitable for defendants to retain the money received from these transactions in light of the fact that plaintiff and the Class members did not receive the benefit that was marketed to them.

78. Plaintiff and the Class members are entitled to restitution of their purchase monies, disgorgement of defendant's profits accrued from its practices, and attorneys' fees and costs.

## XII. EIGHTH CAUSE OF ACTION:

## VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT

## (AGAINST MENU ONLY)

79. Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

80. The acts and practices described above were undertaken by the defendant in

connection with a "transaction" (as defined in Civil Code §1761(e)) which was intended to and did result in the sale of "goods" (as defined in Civil Code §1761(a)) to "consumers" (as defined in Civil Code §1761(d)). Defendant's acts and practices, as alleged in detail above, violated, and continue to violate, Section 1770(a)(5) of the CLRA in that defendant represented to the public, including plaintiff, by means of labeling, advertisements, promotion and/or marketing, that the Products they were purchasing feeding to their pets were safe and healthy pet foods, when instead they contained potentially lethal contaminants, as set forth in detail above.

81. Plaintiff and Class members seek and are entitled to equitable relief in the form of an order:

    (a) Enjoining defendant from engaging in the deceptive business practices described above;

    (d) Enjoining defendant from such deceptive business practices in the future;

    (e) Reimbursing plaintiff and Class members for all veterinary costs incurred as the result of the Products; and

    (f) Establishing a medical monitoring program for consumers' pets that may have ingested the contaminated Products.

    .    82. Pursuant to Section 1782 of the CLRA, plaintiff is notifying defendant in writing of the particular violations of Section 1770 of the CLRA (the Notice) and is demanding, among other things, that defendant provide restitution to consumers who purchased the Products, that it pay for all veterinary bills incurred as the result of pets ingesting the contaminated Products, and that defendant set up a medical monitoring program for pets that may have ingested the Products. Plaintiff is sending Notice by means of by certified mail, return-receipt requested, to defendant at their principal places of business concurrent with the service of this Complaint. If defendant fails to respond to plaintiff's demand within thirty days of receipt of the Notice, pursuant to Section 1782 of the CLRA, plaintiff will amend this Complaint to request statutory damages, actual damages, plus punitive damages, interest and attorneys' fees. Regardless of such an amendment to seek damages, however, plaintiff seeks, and is entitled to, pursuant to

Section 1780(a)(2) of the CLRA, an order for equitable relief as set forth above, plus costs and attorneys' fees and any other relief that the Court deems proper.

## XIII. NINTH CAUSE OF ACTION:

## NEGLIGENCE

## (AGAINST ALL DEFENDANTS)

83. Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

84. Defendants owed plaintiff and Class members a duty to offer for sale in the stream of commerce only safe, uncontaminated products for consumption by pets

85. Defendants breached this duty by offering and selling the contaminated Products, even after receiving consumer complaints and having animals die in its own tests, as set forth above.

86. Through its breach and failure to exercise the due care it owed to Plaintiff and Class members, defendants were negligent in producing, processing, manufacturing, offering for sale and selling the contaminated Products it sold to plaintiff and Class members.

87. Defendants failed to use sufficient quality control, to do adequate testing, to perform proper manufacturing, production, or processing, or failed to take sufficient measures to prevent the contaminated Products from being offered for sale, sold, or fed to pets.

88. Defendants knew or should have known that the contaminated Products presented an unacceptable risk to the pets of the plaintiff and Class members, and that they would result in damage that was foreseeable and reasonably avoidable.

89. The loss, damage, and injuries were foreseeable.

90. Defendants' breach of its duty and negligence proximately caused the loss, damage, and injury to plaintiff and Class members. As a proximate result of this breach of duty by defendants, plaintiff and Class members have been damaged in an amount to be determined at trial, in that, among other things, their pets have become ill, and in some cases died, they have spent substantial amounts on veterinary bills and other care for their pets, and they have spent money on a product that was not what it was represented to be.

## XIV. TENTH CAUSE OF ACTION:

## STRICT PRODUCT LIABILITY – DEFECT IN DESIGN OR MANUFACTURE

## (AGAINST ALL DEFENDANTS)

91. Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

92. Defendants sold the contaminated Products, which were defective and unreasonably dangerous to plaintiff and Class members' pets as set forth in detail above.

93. Defendants' Products were manufactured, sold, distributed, supplied, marketed and promoted by defendants, and were expected to reach and did reach Plaintiff and members of the Class without substantial change in the condition in which they were manufactured and sold by defendant.

94. The Products were manufactured and sold by defendants and were defective in design and/or formulation in that when the Products left the hands of defendants and/or sellers the Products were unreasonably dangerous in that their foreseeable risks exceeded the benefits associated with the design and/or formulation of the Products.

95. Upon information and belief, Plaintiff alleges that defendants actually knew of the defective nature of the Products, but continued to design, manufacture and market them so as to maximize profits at the expense of public health and safety, in conscious disregard of the foreseeable harm caused by the Products.

96. At all times relevant to this action, the product was designed, tested, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold packaged, supplied and/or distributed by defendants in a defective and unreasonably dangerous condition in ways which include, but are not limited to the following:

(a) When placed in the stream of commerce, the Products contained unreasonably dangerous design defects and were not reasonably safe and fit for their intended or reasonably foreseeable purpose, or as intended to be used, thereby subjecting the pets of plaintiff and Class members to risks which exceeded the benefits of the Products;

(b) The Products were insufficiently tested;

(c) The Products caused serious illness, harmful side effects and death, all outweighing any potential utility of the Products; and

(d) In light of the potential risk and harm associated with the ingestion of the Products by pets, a reasonable person who had actual knowledge of this potential risk or harm would have concluded that the Products should not have been marketed, distributed or sold in that condition.

97. At all times relevant to this action, the Products were designed, tested, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed by defendants and was expected to reach and did reach purchasers of the Products, including plaintiff and Class members, without substantial change in the defective and unreasonably dangerous condition in which it was sold.

98. At all times, plaintiff and members of the Class purchased the Products for their intended and reasonably foreseeable purpose.

99. As a direct and proximate result of the defective and unreasonably dangerous condition of the Products, plaintiff and Class members have been damaged in an amount to be determined at trial, in that, among other things, their pets have become ill, and in some cases died, they have spent substantial amounts on veterinary bills and other care for their pets, and they have spent money on Products that were not what they were represented to be.

100. Plaintiff is informed and believes and thereon alleges that defendants knew that the Products were defective and unreasonably dangerous for a significant amount of time before they notified the appropriate agencies and the public and then issued a recall, and that defendants intended that customers and the unknowing public should continue to purchase and feed the products to their pets. In doing these things, defendants were guilty of malice, oppression, and fraud, and plaintiff and Class members are, therefore, entitled to recover punitive damages in an amount sufficient to deter such behavior in the future.

## XV. PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of himself and all others similarly situated, and for

members of the general public as private attorneys general under California Business and Professions Code §17204, prays for relief, jointly and severally, pursuant to each cause of action set forth in this Complaint as follows:

1.      For an order certifying that the action may be maintained as a class action.

2.      For an award of equitable relief pursuant as follows:

      (a) Enjoining defendants from engaging in the unlawful, unfair and fraudulent business practices and deceptive labeling and advertising described in this Complaint;

      (b) Requiring defendants to make full restitution of all monies wrongfully obtained as a result of the conduct described in this Complaint;

      (c) Requiring defendants to disgorge all ill-gotten gains flowing from the conduct described in this Complaint;

      (d) Enjoining from marketing and selling the contaminated Product;

      (e) Reimbursing plaintiff and Class members for all veterinary costs incurred as the result of the Products; and

      (f) Establishing a medical monitoring program for consumers' pets that may have ingested the contaminated Products.

3.      For actual and punitive damages under the CLRA in an amount to be proven at trial, including any damages as may be provided for by statute upon the filing of an amended Complaint should the demanded corrections not take place within the thirty-day notice period.

4.      For an award of attorneys' fees pursuant to, inter alia, §1780(d) of the CLRA and Code of Civil Procedure §1021.5.

5.      For actual damages in an amount to be determined at trial for the Third, Fourth, Fifth, Sixth, Ninth and Tenth Causes of Action;

6.      For punitive damages in an amount to be determined at trial for the for the Fourth, Fifth and Tenth Causes of Action;

7.      For an award of costs and any other award the Court might deem appropriate; and

8.      For pre- and post-judgment interest on any amounts awarded.

Hewell Law Firm, APC

Dated: May 24, 2007                    By: _____

Harold M. Hewell

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

| | |
|---|---|
| **I (a) PLAINTIFFS**<br><br>**JOHN COLLIARD,** as an individual consumer, and on behalf of all others similarly situated,<br>**(b) COUNTY OF RESIDENCE OF FIRST LISTED** San Diego<br>**PLAINTIFF**<br>(EXCEPT IN U.S. PLAINTIFF CASES) | **DEFENDANTS**<br>**MENU FOODS, INC.,** a New Jersey 07 MAY 24 PM 3:59<br>corporation, and **CHEMNUTRA, INC.,** a DISTRICT COURT<br>Delaware corporation, SOUTHERN DISTRICT OF CALIFORNIA<br><br>**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT**<br>(IN U.S. PLAINTIFF CASES ONLY) BY _____ DEPUTY<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| **(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**<br><br>Harold M. Hewell, Hewell Law Firm, APC<br>402 W. Broadway, Fourth Floor<br>San Diego, CA 92101, Tel: (619) 235-6854 | **ATTORNEYS (IF KNOWN)**<br><br>'07 CV 951 IEG    (BLM) |

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

- 1 U.S. Government Plaintiff
- 2 U.S. Government Defendant
- 3 Federal Question (U.S. Government Not a Party)
- X 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | X 1 | 1 | Incorporated or Principal Place of Business in This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business in Another State | X 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).

Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) and 28 U.S.C. § 1332(d)(6)

## V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| | **PERSONAL INJURY** | **PERSONAL INJURY** | | | |
| 110 Insurance | 310 Airplane | 362 Personal Injury- Medical Malpractice | 610 Agriculture | 422 Appeal 28 USC 158 | 400 State Reappointment |
| 120 Marine | 315 Airplane Product Liability | 365 Personal Injury - Product Liability | 620 Other Food & Drug | 423 Withdrawal 28 USC 157 | 410 Antitrust |
| 130 Miller Act | 320 Assault, Libel & Slander | | 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | 430 Banks and Banking |
| 140 Negotiable Instrument | 330 Federal Employers' Liability | 368 Asbestos Personal Injury Product Liability | 630 Liquor Laws | 820 Copyrights | 450 Commerce/ICC Rates/etc. |
| 150 Recovery of Overpayment &Enforcement of Judgment | 340 Marine | **PERSONAL PROPERTY** | 640 RR & Truck | 830 Patent | 460 Deportation |
| 151 Medicare Act | 345 Marine Product Liability | 370 Other Fraud | 650 Airline Regs | 840 Trademark | 470 Racketeer Influenced and Corrupt Organizations |
| 152 Recovery of Defaulted Student Loans (Excl. Veterans) | 350 Motor Vehicle | 371 Truth in Lending | 660 Occupational Safety/Health | **SOCIAL SECURITY** | 810 Selective Service |
| 153 Recovery of Overpayment of Veterans Benefits | 355 Motor Vehicle Product Liability | 380 Other Personal Property Damage | 690 Other | 861 HIA (1395ff) | 850 Securities/Commodities Exchange |
| 160 Stockholders Suits | 360 Other Personal Injury | 385 Property Damage Product Liability | **LABOR** | 862 Black Lung (923) | 875 Customer Challenge 12 USC |
| 190 Other Contract | | | 710 Fair Labor Standards Act | 863 DIWC/DIWW (405(g)) | 891 Agricultural Acts |
| 195 Contract Product Liability | | | 720 Labor/Mgmt. Relations | 864 SSID Title XVI | 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 730 Labor/Mgmt. Reporting & Disclosure Act | 865 RSI (405(a)) | 893 Environmental Matters |
| 210 Land Condemnation | 441 Voting | 510 Motions to Vacate Sentence Habeas Corpus | 740 Railway Labor Act | **FEDERAL TAX SUITS** | 894 Energy Allocation Act |
| 220 Foreclosure | 442 Employment | 530 General | 790 Other Labor Litigation | 870 Taxes (U.S. Plaintiff or Defendant) | 895 Freedom of Information Act |
| 230 Rent Lease & Ejectment | 443 Housing/Accommodations | 535 Death Penalty | 791 Empl. Ret. Inc. Security Act | 871 IRS - Third Party 26 USC 7609 | 900 Appeal of Fee Determination Under Equal Access to Justice |
| 240 Tort to Land | 444 Welfare | 540 Mandamus & Other | | | 950 Constitutionality of State |
| 245 Tort Product Liability | 440 Other Civil Rights | 550 Civil Rights | | | X 890 Other Statutory Actions |
| 290 All Other Real Property | | 555 Prisoner Conditions | | | |

## VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)

X 1 Original Proceeding ▪ 2 Removal from State Court ▪ 3 Remanded from Appellate Court ▪ 4 Reinstated or Reopened ▪ 5 Transferred from another district (specify) ▪ 6 Multidistrict Litigation ▪ 7 Appeal to District Judge from Magistrate Judgment

| VII. REQUESTED IN COMPLAINT: | X CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23 | DEMAND $ more than $5 million | Check YES only if demanded in complaint: JURY DEMAND: X YES ▪ NO |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY (See Instructions): | JUDGE None | | Docket Number |
|---|---|---|---|
| DATE 5/21/07 | | SIGNATURE OF ATTORNEY OF RECORD | |

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

138588 $350.00

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 138588    — LJ
* * C O P Y * *
May 24, 2007
16:28:20**

**Civ Fil Non-Pris**
USAO #.: CIVIL FILING 07-CV-0951-IEG
Amount.:                $350.00 CK
Check#.: BC 3389


**Total—>    $350.00**


FROM: JOHN COLLARD V MENU FOODS INC
        07-CV-0951-IEG